WILLIAM L. MAUK (ISB # 1825)
GRANT T. BURGOYNE (ISB # 3846)
**MAUK & BURGOYNE**
515 South Sixth Street
Post Office Box 1743
Boise, Idaho  83701-1743
Telephone: (208) 345-2654
Facsimile: (208) 345-3319

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| MICHAEL E. TOMLIN, | ) | |
| | ) | Case No. _____ |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| GARDEN VALLEY SCHOOL DISTRICT NO. | ) | |
| 71, a political subdivision of the State of Idaho; | ) | |
| KATHLEEN GARDNER, ROB HAZEN, | ) | **COMPLAINT AND DEMAND** |
| LAURIE SNYDER and ALAN WARD; and | ) | **FOR JURY TRIAL** |
| DOES 1 through 10, fictitiously-named persons, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

COMES NOW Plaintiff Michael E. Tomlin by and through undersigned counsel,

and for causes of action against the Defendants, states, avers and alleges as follows.

### INTRODUCTION

1.      This is a civil action for redress of the deprivation of Plaintiff's civil rights

under the constitution and laws of the United States, for breach of contract under Idaho

law and for violation of Idaho statutory law, as herein more particularly described.

**COMPLAINT AND DEMAND FOR JURY TRIAL, P. 1**

**JURISDICTION AND VENUE**

2.      The jurisdiction of this Court is invoked and secured pursuant to 28 U.S.C. Section 1331, affording federal question jurisdiction, and 28 U.S.C. Section 1343, affording jurisdiction for violations of civil rights.

3.      This Court has pendent jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. Section 1367 because there is a common nucleus of operative facts as to his federal and state claims.

4.      Venue is proper in the District of Idaho in that all of the acts and omissions which form the basis of this Complaint occurred in Idaho, Mr. Tomlin was a resident of Garden Valley, Boise County, Idaho at the time of the wrongs alleged herein commenced, Defendant Garden Valley School District No. 71 (the "School District") is a governmental subdivision of the State of Idaho, and all other Defendants are residents of Boise County, Idaho.

**PARTIES**

5.      Mr. Tomlin was at all times a citizen of the United States and a person within the jurisdiction thereof.  He resided in Garden Valley, Boise County, Idaho at times relevant until on or about June 25, 2012 when he undertook to move to Alamosa, Colorado.

6.      Defendant Garden Valley School District No. 71 is, and at all times relevant, has been a political and governmental subdivision of the State of Idaho.

7.      Defendant Kathleen Gardner ("Gardner") is, and at all times relevant has been, a resident of Boise County, Idaho.  Gardner began serving as a member of the

**COMPLAINT AND DEMAND FOR JURY TRIAL, P. 2**

School District's Board of Trustees ("Board") after June 1, 2011 but before June 30, 2011.

8.      Defendant Rob Hazen ("Hazen") is, and at all times relevant has been, a resident of Boise County, Idaho and a member of the Board.

9.      Defendant Laurie Snyder ("Snyder") is, and at all times relevant has been, a resident of Boise County, Idaho.  She was a member of the Board prior to May 31, 2011 and through at least June 30, 2011.

10.     Defendant Alan Ward ("Ward") is, and at all times relevant has been, a resident of Boise County, Idaho and a member of the Board.

11.     Defendants, DOES 1 through 10 are fictitiously-named persons or entities, whose true identities are presently unknown to Plaintiff, but who may be responsible, in whole or part, for the wrongful conduct alleged herein.  Plaintiff reserves the right to amend this Complaint, as further information becomes available, to properly identify the true names of such Defendants and the specific acts and omissions giving rise to their liability.

**FACTUAL BACKGROUND**

12.     At all times relevant, Mr. Tomlin held an Idaho school superintendent's certificate.

13.     Mr. Tomlin was hired by the Board and served as the School District's Superintendent pursuant to a series of three employment contracts written on the "Superintendents Contract Form" which form was approved by Idaho's Superintendent of Public Instruction as "a contract which must be used by school districts."

14.     The first such employment contract

**COMPLAINT AND DEMAND FOR JURY TRIAL, P. 3**

(a)      was entered into and commenced on November 12, 2008, and ran through June 30, 2010;

(b)      provided that Mr. Tomlin was to receive a salary of $72,000 for the first year of the contract period "with an increment to be determined upon review . . . for each of the succeeding years . . ."; and

(c)      provided that the "contract shall be reviewed on or before the regular board meeting in the month of January 2010 for consideration of extension to the month and day of June 30th, in the year of 2012 . . . ."

15.      The second such employment contract

(a)      was entered into on June 8, 2009, commenced on July 1, 2009, and ran through June 30, 2012;

(b)      provided that Mr. Tomlin was to receive a salary of $72,000 for the first year of the contract period "with [a] Two Thousand Eight Hundred dollar[] ($2,800.00) increment for each of the succeeding years . . .";

(c)      provided that the "contract shall be reviewed on or before the regular board meeting in the month of January for consideration of extension to the month and day of June 30, in the year of 2013 . . . ."

16.      The third such employment contract (the "Third Contract")

(a)      was entered into on January 11, 2010, commenced on July 1, 2010 and ran through June 30, 2013;

(b)      provided that Mr. Tomlin was to receive a salary of $72,000 for the first year of the contract period "with [a] Two Thousand Eight Hundred dollar[] ($2,800.00) increment for each of the succeeding years . . ."; and

**COMPLAINT AND DEMAND FOR JURY TRIAL, P. 4**

(c)     provided that the "contract shall be reviewed on or before the regular board meeting in the month of January for consideration of extension to the month and day of June 30, in the year of 2014 . . . ."

17.     All three of these contracts

(a)     incorporated and made a part of the contracts "the pertinent statutes of the State of Idaho, such regulations as the State Board of Education may legally prescribe, and policies of the district"; and

(b)     stated that "nothing herein contained shall operate or be construed as a waiver of any of the rights, powers, privileges, or duties of either party hereto, by and under the laws of the State of Idaho, otherwise than is herein expressly stated."

18.     Idaho Code Section 33-513(5) provides that an Idaho school district superintendent can only be discharged for "a material violation of any lawful rules or regulations of the board of trustees or of the state board of education . . ." following written notice and a due process hearing complying with the specific procedures set forth in the statute.

19.     School District Policy No. 454 also provides that the School District's superintendent may only be discharged following notice and a due process hearing.

20.     Idaho Code Section 33-513(5) and School District Policy No. 454 afford Mr. Tomlin contractual rights and protections because they were incorporated into and made a part of his contracts. Said statute and policy also afford him rights and protections, as a matter of law, independent of contract.

**COMPLAINT AND DEMAND FOR JURY TRIAL, P. 5**

21.     As part of all three contracts, Mr. Tomlin was promised compensation including a salary and employment benefits.  The employment benefits included health insurance, paid vacation, paid sick leave and participation in the Public Employee Retirement System of Idaho.

22.     At the time Mr. Tomlin accepted employment with the School District, he and his wife resided in Ada County, Idaho where they owned a home.

23.     As a condition of employment and continued employment, the School District required that Mr. Tomlin reside in Garden Valley, Boise, County, Idaho.

24.     To comply with the School District's Garden Valley residency requirement, and in reliance on the School District's contractual promises,  Mr. Tomlin first rented a place in Garden Valley, then sold his Ada County home, and, in or about May 2009, purchased and moved into a home in Garden Valley.

25.     The School District knew that its residency requirement caused Mr. Tomlin to sell his Ada County home and to purchase a home in Garden Valley.

26.     In reliance upon his three multi-year contracts, each of which promised him the opportunity to receive contract extensions, Mr. Tomlin retained, and remained living, in his Garden Valley home throughout his employment as Superintendent of the School District, and beyond.

27.      On or about May 31, 2011, Defendants Hazen, Snyder and Ward placed Mr. Tomlin on administrative leave pending what they characterized as a due process hearing on a proposal to remove him as the School District's Superintendent.

28.     On or about June 1, 2011, Defendants Hazen, Snyder and Ward issued Mr. Tomlin a "Notice of Termination, Placement on Administrative Leave and Notice of Due

**COMPLAINT AND DEMAND FOR JURY TRIAL, P. 6**

Process Hearing" (the "District's Notice"). The District's Notice contained a list of reasons for proposing termination and stated that Mr. Tomlin could appear with counsel at the due process hearing.

29. On or about June 6, 2011, the Board, by the majority vote of Defendants Hazen, Snyder and Ward, confirmed and ratified the actions these Defendants had unilaterally taken on or about May 31 and June 1, 2011.

30. The Board's two other members voted against confirming and ratifying the actions of Hazen, Snyder and Ward, and then resigned from the Board in protest. One of these resigning Board members was then replaced by Defendant Gardner.

31. Mr. Tomlin promptly retained counsel, and incurred and paid substantial fees and costs, in preparation for the due process hearing. Defendants were aware of Mr. Tomlin's retention of counsel by approximately June 11, 2011 and well before June 30, 2011.

32. On or about June 30, 2011, the District's Board, then consisting of Defendants Hazen, Gardner, Snyder and Ward, acted unanimously to rescind the Board's previous actions, in essence withdrawing the District's Notice to Mr. Tomlin and immediately removing him as Superintendent of the School District, without provision of any due process hearing, for alleged "just and other reasonable cause."

33. None of Mr. Tomlin's three contracts with the School District, including the Third Contract which became effective on June 30, 2011, contained a provision permitting his removal or termination for "just and other reasonable cause."

34. No statute or School District rule authorized Mr. Tomlin's removal or termination for "just and other reasonable cause."

**COMPLAINT AND DEMAND FOR JURY TRIAL, P. 7**

35.     The Board's action of June 30, 2011 was silent as to the supposed "just and other reasonable cause" for removal.

36.     Mr. Tomlin, through counsel, sought the particulars of the asserted "just and other reasonable cause" from the School District but it has never provided any.

37.     Mr. Tomlin, through counsel, informed the School District that he was entitled to his salary and employment benefits through June 30, 2013.

38.     Nonetheless, commencing August 1, 2011 and continuing through the filing of this Complaint, the Board has refused to pay Mr. Tomlin the salary and benefits due him through at least June 30, 2013 as required by the Third Contract.

## INCORPORATION

39.     Plaintiff realleges and incorporates paragraphs 1 through 38 above, as part of each of the counts, claims and causes of action stated below, and as part of the damages, costs and attorney fee allegations and claims below

## COUNT ONE

### (Violation of Federal Civil Rights)

40.     The Fourteenth Amendment to the United States Constitution prohibits and makes unlawful actions taken by those acting under color of state law which deprive persons of property interests without due process of law.  At a minimum, due process of law includes notice and an opportunity to be heard.

41.     Pursuant to 42 U.S.C. Section 1983 ("Section 1983"), every person who, under color of law deprives a citizen of the United States of any rights, privileges or immunities secured by the Constitution and laws of the United States, shall be liable to the party injured at law and/or in equity.

**COMPLAINT AND DEMAND FOR JURY TRIAL, P. 8**

42. 42 U.S.C. Section 1985 provides that the injured party shall have an action for damages occasioned by such injury or deprivation.

43. Mr. Tomlin had constitutionally protected property interests in his position, contract and continued employment as the School District's Superintendent, as well as his monetary and non-monetary compensation.

44. Each Defendant is, and at the time of the actions taken against Mr. Tomlin alleged herein was, a "person" within the meaning of Section 1983.

45. By their actions, each and all of the Defendants unlawfully deprived Mr. Tomlin of his constitutionally protected property interests and his civil rights without due process of law, including but not limited to the following:

(a) withdrawing the Notice of Termination, Placement on Administrative Leave and Notice of Due Process Hearing;

(b) rescinding Mr. Tomlin's paid administrative leave;

(c) removing Mr. Tomlin from his position as Superintendent of the School District without notice, without informing him of the reasons for removal, without legal justification, and without a hearing affording him the protections of due process;

(d) purporting to terminate Mr. Tomlin's uncompleted and unexpired Third Contract which entitled him to continued employment, compensation and benefits through at least June 30, 2013;

(e) denying and refusing to pay Mr. Tomlin the remaining two years of salary and benefits due on his contract;

(f)     failing to appropriately consider and act on extending Mr. Tomlin's contract and employment beyond June 30, 2013.

46.     The acts, omissions and conduct of the Defendants, and each of them, which caused the unlawful deprivation of Mr. Tomlin's property interests and civil rights were actions taken under the color and authority of state law.

47.     The actions taken by Defendants in deprivation of Mr. Tomlin's property interests and civil rights represent and were the product of the official policies, customs and/or practices of the School District.

48.     In taking and implementing such actions the individually named Defendants were the final policy-making authorities and decision makers for the School District and were acting within their authorities.

49.     To the extent any of the Defendants were not directly and personally involved in the policies, customs, practices and actions resulting in the deprivation of Plaintiff's property and civil rights, each such Defendant ratified and confirmed the same and, in so doing, acted with deliberate indifference to Mr. Tomlin's constitutionally protected rights and interests.

50.     Defendants, and each of them, are liable to Mr. Tomlin for deprivation of his constitutionally protected property interests and civil rights.

## COUNT TWO

### (Breach of Contract and Promissory Estoppel)

51.     There has existed a contract between the School District and Mr. Tomlin before, at the time of, and after his removal as the School District's Superintendent.  Such contract is reflected, in part, by the Third Contract.

**COMPLAINT AND DEMAND FOR JURY TRIAL, P. 10**

52.     Mr. Tomlin was not in material breach of his contractual duties to the School District and had two years remaining on the Third Contract when removed as Superintendent.

53.     The School District materially breached its contractual obligations to Mr. Tomlin.  Such breach includes but is not limited to:

(a)     withdrawing the Notice of Termination, Placement on Administrative Leave and Notice of Due Process Hearing;

(b)     rescinding his paid administrative leave;

(c)     removing him from his position as Superintendent of the School District without notice, without informing him of the reasons for removal, without legal justification, and without the due process promises made, and the due process protections and guarantees required by Idaho Code Section 33-513(5) and School District Policy No. 454 which were incorporated into and made a part of his contract;

(d)     removing him as Superintendent and terminating his employment for purported "just and other reasonable cause," which is not a contractually permissible basis for such actions pursuant to the Third Contract;

(d)     purporting to terminate Mr. Tomlin's uncompleted and unexpired Third Contract which entitled him to continued employment, compensation and benefits through at least June 30, 2013;

(e)     denying and refusing to pay Mr. Tomlin the remaining two years of salary and benefits left on his contract; and

**COMPLAINT AND DEMAND FOR JURY TRIAL, P. 11**

(f)     failing to appropriately consider and act on extending Mr. Tomlin's contract and employment beyond June 30, 2013.

54.     The School District is liable to Mr. Tomlin for such breach.

55.     To the extent that the Third Contract is construed to permit removal of Mr. Tomlin as Superintendent and termination of his contract in instances, or for reasons, not authorized by Idaho Code Section 33-513(5), the Third Contract is against public policy and unenforceable against Mr. Tomlin.

56.     Furthermore, and in the alternative, Defendants are promissorily estopped to deny Mr. Tomlin a due process hearing because:

(a)     Defendants should reasonably have expected that their June 1, 2011 notice promising a due process hearing at which Mr. Tomlin could appear with an attorney would induce action or forebearance on his part in the form of retaining an attorney and incurring and paying costs and attorney fees to prepare for the hearing;

(b)     Mr. Tomlin relied on the Defendants' promise of a due process hearing;

(c)     Said promise created substantial economic detriment to Mr. Tomlin for said costs and attorney fees; and

(d)     Mr. Tomlin's reliance was reasonable and justified, and was or should have been foreseeable to Defendants.

**COMPLAINT AND DEMAND FOR JURY TRIAL, P. 12**

## COUNT THREE

### (Wrongful Termination in Violation of Idaho Law)

57.    At all times relevant hereto, Idaho Code Section 33-513(5) prohibited the termination of a school district superintendent's employment for reasons other than "a material violation of any lawful rules or regulations of the board of trustees or of the state board of education . . . ."

58.    At the time he was removed as Superintendent, Mr. Tomlin had not committed, and was not informed he had committed, any material violation of any lawful rules or regulations of the board of trustees or of the state board of education.

59.    The removal of Mr. Tomlin as Superintendent by the School District pursuant to the actions of its Board of Trustees was, therefore, in violation of Idaho Code Section 33-513(5) and Idaho's public policy.

60.    To the extent that the Third Contract is construed to permit removal of Mr. Tomlin as Superintendent and termination of his contract in instances, or for reasons, not authorized by Idaho Code Section 33-513(5), the Third Contract is against public policy and unenforceable against Mr. Tomlin.

### DAMAGES, COSTS AND ATTORNEY FEES

61.    Each of the allegations, statements and averments contained in the following paragraphs is incorporated by reference, as appropriate and applicable, in the causes of action stated above.

62.    Defendants' deprivation of Mr. Tomlin's property interests and civil rights, contractual breaches, and other wrongful conduct as set forth in the above stated causes of action, resulted in, caused and/or proximately caused Mr. Tomlin the loss of his

**COMPLAINT AND DEMAND FOR JURY TRIAL, P. 13**

valuable contract and employment, and consequential, incidental, compensatory and other general damages, in such amounts as will be proved at trial.

63.     Mr. Tomlin's economic damages include but are not limited to the following:

(a)     the value of salary for the period from August 1, 2011 through June 30, 2013 in an amount not less than $148,733.33;

 (b)     the value of employment benefits from August 1, 2011 through June 30, 2013;

(c)     the value of future salary and employment benefits from and after June 30, 2013;

(d)     the value of lost future retirement benefits;

(e)     the value of lost future social security benefits;

(f)     loss of investments and earnings, losses associated with Mr. Tomlin's Garden Valley home, and dislocation and relocation costs;

(g)     attorney fees and costs spent to prepare for the promised and noticed, but denied, due process hearing in an amount of not less than $5,000.00; and

(h)     prejudgment interest of 12% per annum.

64.     Mr. Tomlin's non-economic damages include loss of reputation, and loss of professional opportunities and standing.

65.     The conduct of Defendants as alleged herein was gross, reckless, oppressive, wanton, willful, intentional, malicious, outrageous, in extreme deviation from reasonable standards of conduct, committed with evil motive or intent, and/or committed

**COMPLAINT AND DEMAND FOR JURY TRIAL, P. 14**

with callous indifference to Mr. Tomlin's constitutionally and/or legally protected rights, and warrants an award of exemplary and punitive damages on those causes of action as allowed by law.

66.     As a consequence of Defendants' conduct as described herein, Mr. Tomlin retained the services of the law firm of Mauk & Burgoyne, and has incurred, and will continue to incur, attorney fees and costs to protect his interests and prosecute his claims. Mr. Tomlin is entitled to recovery of those fees and costs pursuant to 42 U.S.C. Section 1988(b), Idaho Code Sections 12-120(3) and/or 12-121, and such other principles and/or provisions of law and rule as may be applicable.

## ADDITIONAL CAUSES OF ACTION

67.     If, during the course of proceedings related to this action or otherwise, it should come to Mr. Tomlin's attention that any of the Defendants has engaged in other wrongful conduct against him, or breached any other duties or obligations owed to him, Mr. Tomlin reserves the right to move to amend this Complaint as necessary and appropriate to plead and present other allegations and causes of actions against the Defendants and, as the facts and circumstances may warrant, to add additional parties to this action.

## PRAYER

WHEREFORE, Mr. Tomlin prays for the following relief:

1.     Entry of judgment in his favor on each of his claims herein;

2.     On Count One, an award of Mr. Tomlin's economic and non-economic damages in such amounts as are proven at trial in an amount not less than $153,733.33.

**COMPLAINT AND DEMAND FOR JURY TRIAL, P. 15**

3.      On Count Two, an award of Mr. Tomlin's economic damages in such amounts as are proven at trial in an amount not less than $153,733.33.

4.      On count Three, an award of Mr. Tomlin's economic and non-economic damages in such amounts as are proven at trial in an amount not less than $153,733.33.

5.      On Counts Two and Three, an award of prejudgment interest at the rate of 12% per annum on Mr. Tomlin's damages;

6.      Attorney fees and costs of suit pursuant to 42 U.S.C. Section 1988(b), Idaho Code Sections 12-120(3) and/or 12-121, and such other principles and/or provisions of law and rule as may be applicable; and

7.      Such other and further relief in law and equity as may be deemed appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on all claims and causes triable by no less than twelve (12) jurors, pursuant to Rule 38, Federal Rules of Civil Procedure.

DATED this 26th day of June, 2012.

**MAUK & BURGOYNE**


_____/s/_____
Grant T. Burgoyne, Of the Firm
Attorneys for Plaintiff

**COMPLAINT AND DEMAND FOR JURY TRIAL, P. 16**